# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| **MICHAEL G. BALDWIN** </br> c/o Cornerstone Law Firm </br> 8350 N. St. Clair Ave, #225 </br> Kansas City, MO 64151 </br> </br> Plaintiff, </br> </br> v. </br> </br> **CORECIVIC OF TENNESSEE, LLC.** </br> *Registered Agent*: </br> The Corporation Company </br> 112 SW 7th Street, Suite C </br> Topeka, KS 66603 </br> </br> Defendant. | Case No. _____ </br> </br> **REQUEST FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Michael Baldwin, by and through his attorney, and for his cause of action against Defendant CoreCivic of Tennessee, LLC, states and alleges as follows:

### Parties and Jurisdiction

1. Plaintiff is a citizen of the state of Kansas, currently residing in Paola, Miami County, Kansas.

2. Defendant CoreCivic of Tennessee, LLC ("CoreCivic") is and was at all times relevant a limited liability company organized under the laws of Tennessee.

3. Under information and belief, one or more of CoreCivic's members are citizens of the state of Tennessee.

4. At all times relevant, CoreCivic owned and operated the Leavenworth Detention Center, located at 100 Hwy Terrace, Leavenworth, Leavenworth County, Kansas 66048.

5. CoreCivic conducts substantial and continuous business in the state of Kansas.

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 as some or all of Plaintiff's claims arise under the laws of the United States.

7. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367 because the state law claim is part of the same case or controversy as the claims that arise under federal law.

8. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the instant claim occurred in this District.

9. This Court has jurisdiction over the parties and the subject matter of this action.

### Additional Factual Allegations

10. Plaintiff worked for CoreCivic from November 2009 until on or about March 1, 2017.

11. CoreCivic employed Plaintiff as a Correctional Officer.

12. In 2007, the Office of the Federal Detention Trustee awarded contract number DJJODT7C0002 (hereinafter "the Contract") to Corrections Corporation of America, now operating as CoreCivic, wherein CoreCivic agreed to provide detention services for the federal government at the Leavenworth Detention Center in Leavenworth, Kansas.

13. Pursuant to the Contract and the Service Contract Act, 41 U.S.C. §§ 351-358 ("SCA"), CoreCivic was required to pay its employees, including Plaintiff, specific monetary wages and fringe benefits.

14. The federal government made monthly payments to CoreCivic in return for CoreCivic's services under the Contract.

15. Payment made by the federal government to CoreCivic under the Contract were contingent upon CoreCivic's compliance with the material terms of the Contract.

16. At all times relevant, CoreCivic represented to the federal government that it was complying with the terms and provisions of both the Contract and the SCA.

17. On October 28, 2013, Plaintiff filed an internal grievance with CoreCivic, alleging that CoreCivic was not paying its employees the requisite fringe benefits pursuant to the Contract and SCA.

18. On November 2, 2013, CoreCivic transferred Plaintiff from his normal posting to Unit 8, which was a "high custody" unit known for its unruly inmate population.

19. In September 2014, Plaintiff filed a complaint with the United States Department of Labor ("DOL"), alleging that CoreCivic was not paying its employees pursuant to the Contract and SCA.

20. The DOL subsequently opened an investigation into Plaintiff's claims.

21. On or about January 21, 2015, CoreCivic's warden, Isaac Johnston ("Warden Johnston"), told Plaintiff that he was aware of Plaintiff's complaint to the DOL, but that "nothing [was] going to change" and Plaintiff had "big balls" for making the complaint.

22. On or about June 10, 2015, Plaintiff was denied promotion to a position for which he was eligible and for which he was qualified, and a less-qualified individual was promoted in his stead.

23. On June 25, 2015, the DOL concluded its investigation into Plaintiff's complaint, holding that CoreCivic owed several hundred thousand dollars in backpay to employees.

24. The DOL also fined CoreCivic several hundred thousand dollars for its noncompliance with the Contract and SCA.

25. On June 25, 2015, Warden Johnston called a meeting with all CoreCivic employees wherein he berated Plaintiff about his complaint to the DOL.

26. During the June 25 meeting, Warden Johnston told CoreCivic employees that the prison might close if Plaintiff kept complaining.

27. After the June 25 meeting, Plaintiff's coworkers began referring to Plaintiff as a "rat."

28. During new employee training, Plaintiff's manager, Sandra Elliot, would display Plaintiff's picture in a PowerPoint presentation and tell the new employees that Plaintiff was not to be trusted.

29. In July 2015, CoreCivic re-assigned Plaintiff to the position of "exterior guard."

30. CoreCivic employees considered the exterior guard to be a very undesirable position.

31. In July 2015, CoreCivic's Chief of Security, Rodger Moore, told Plaintiff that he was no longer allowed to take restroom breaks during his twelve-hour shifts.

32. Around October 2016, Plaintiff discovered that one of his coworkers, L.E., had been stealing large equipment and gas tanks from CoreCivic.

33. Plaintiff reported L.E.'s conduct to his shift supervisor, Zen Daniels.

34. Plaintiff asked Mr. Daniels to keep his identity anonymous because he feared retaliation for reporting L.E. to management.

35. Mr. Daniels did not keep Plaintiff's identity anonymous and as a result, Plaintiff's coworkers discovered that Plaintiff had turned L.E. in.

36. Around November or December 2016, Plaintiff's coworker told Plaintiff not to go to CoreCivic's holiday party because "snitches end up in ditches."

37. Plaintiff reported his coworker's comment to the new warden at the facility, but nothing was done to address Plaintiff's concerns for his safety.

38. In January 2017, Plaintiff discovered a dead rat on top of his vehicle after his shift.

39. On or around January 27, 2017, Plaintiff discovered that his coworkers told prison inmates that there was an award of $100 if one of the inmates 'shanked' Plaintiff.

40. Fearing for his life, Plaintiff went on FMLA leave for anxiety and did not return to work.

41. On or about March 1, 2017, because his concerns about his safety had not been addressed or resolved by CoreCivic, Plaintiff was constructively discharged from employment.

## COUNT I
### Violation under 31 U.S.C. § 3730(h)
### Retaliation (False Claims Act)

42. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

43. In September 2014, Plaintiff contacted the DOL and reported that CoreCivic was repeatedly failing to pay certain fringe benefits to its employees, in violation of the SCA and the Contract.

44. At all times relevant, CoreCivic represented to the federal government that it was acting in compliance with the Contract and SCA by paying the requisite fringe benefits to its employees.

45. CoreCivic made these representations in conjunction with claims for payment to the federal government.

46. The claims for payment were false because CoreCivic was not paying its employees pursuant to the Contract and SCA.

47. In reporting CoreCivic's willful noncompliance with the Contract and SCA, Plaintiff engaged in conduct protected by the False Claims Act, 31 U.S.C. §§ 3729-30.

48. CoreCivic was aware that Plaintiff disclosed its Contract and SCA noncompliance to the DOL.

49. After Plaintiff made his report to the DOL, CoreCivic subjected Plaintiff to treatment that made Plaintiff's work intolerable.

50. CoreCivic's conduct was directed toward forcing Plaintiff to quit.

51. CoreCivic failed to take prompt and remedial action to correct the harassment and unfair treatment to which Plaintiff was subjected.

52. Plaintiff's decision to terminate his employment was a reasonably foreseeable consequence of CoreCivic's conduct.

53. The conduct to which CoreCivic subjected Plaintiff was such that a reasonable person in his situation would find it intolerable and find that resignation was the only reasonable alternative.

54. CoreCivic subjected Plaintiff to multiple adverse actions during his employment, including harassment, assignment to undesirable job duties, and constructive discharge.

55. Plaintiff's participation in protected conduct was at least a motivating factor in the adverse actions taken against him.

56. CoreCivic knew or should have known about the adverse actions taken against Plaintiff during his employment.

57. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of CoreCivic, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by CoreCivic, thus making CoreCivic liable for said actions under the doctrine of *respondeat superior*.

58. CoreCivic failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees.

59. CoreCivic failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the federal labor laws.

60. As shown by the foregoing, Plaintiff suffered intentional retaliation for reporting CoreCivic's unlawful conduct to the DOL.

61. As a direct and proximate result of CoreCivic's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

62. As a further direct and proximate result of CoreCivic's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of emotional distress and related compensatory damages.

63. Pursuant to the provisions of the FCA, Plaintiff is entitled to recover reasonable attorneys' fees from CoreCivic.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against CoreCivic for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such and further legal and equitable relief as the Court deems just and proper.

## COUNT II
**Violation under 29 U.S.C. § 215**
**Retaliation (Fair Labor Standards Act)**

64. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

65. In September 2014, Plaintiff contacted the DOL and reported that CoreCivic was repeatedly failing to pay certain fringe benefits to its employees, in violation of the SCA and the Contract.

66. Plaintiff's report to the DOL constituted protected conduct under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA").

67. After Plaintiff made his report to the DOL, CoreCivic subjected Plaintiff to treatment that made Plaintiff's work intolerable.

68. CoreCivic's conduct was directed toward forcing Plaintiff to quit.

69. CoreCivic failed to take prompt and remedial action to correct the harassment and unfair treatment to which Plaintiff was subjected.

70. Plaintiff's decision to terminate his employment was a reasonably foreseeable consequence of CoreCivic's conduct.

71. The conduct to which CoreCivic subjected Plaintiff was such that a reasonable person in his situation would find it intolerable and find that resignation was the only reasonable alternative.

72. After Plaintiff reported CoreCivic's unlawful conduct to the DOL, CoreCivic subjected him to multiple adverse actions, including harassment, assignment to undesirable job duties, and constructive discharge.

73. Plaintiff's participation in protected conduct was at least a motivating factor in the adverse actions taken against him.

74. CoreCivic knew or should have known about the adverse actions taken against Plaintiff during his employment.

75. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of CoreCivic, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly

authorized or ratified by CoreCivic, thus making CoreCivic liable for said actions under the doctrine of *respondeat superior*.

76. CoreCivic failed to make good faith efforts to establish and enforce policies to prevent unlawful retaliation against its employees.

77. CoreCivic failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the federal labor laws.

78. As shown by the foregoing, Plaintiff suffered intentional retaliation for reporting CoreCivic's unlawful conduct to the DOL.

79. As a direct and proximate result of CoreCivic's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

80. By failing to take prompt and effective remedial action, CoreCivic, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

81. As a further direct and proximate result of CoreCivic's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of emotional distress and related compensatory damages.

82. CoreCivic acted in bad faith and with reckless disregard to Plaintiff's legal rights, entitling Plaintiff to punitive damages.

83. Plaintiff is entitled to recover reasonable attorneys' fees from CoreCivic.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against CoreCivic for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as

allowed by law; and for such and further legal and equitable relief as the Court deems just and proper.

### COUNT III
### Violation of Kansas Public Policy
### Constructive Discharge

84. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

85. The United States of America has adopted a well-established and clear mandate of public policy that governs the payment of wages and benefits to service employees under the SCA.

86. It is unlawful to retaliate or otherwise discriminate against an employee because of said employee's good faith complaint of a reporting of an employer's serious infraction of rules, regulations, or law pertaining to public health, safety, and the general welfare.

87. In September 2014, Plaintiff contacted the DOL and reported that CoreCivic was repeatedly failing to pay certain fringe benefits to its employees, in violation of the SCA and the Contract.

88. After Plaintiff made his report to the DOL, CoreCivic subjected Plaintiff to treatment that made Plaintiff's work intolerable.

89. CoreCivic's conduct was directed toward forcing Plaintiff to quit.

90. CoreCivic failed to take prompt and remedial action to correct the harassment and unfair treatment to which Plaintiff was subjected.

91. Plaintiff's decision to terminate his employment was a reasonably foreseeable consequence of CoreCivic's conduct.

92. The conduct to which CoreCivic subjected Plaintiff was such that a reasonable person in his situation would find it intolerable and find that resignation was the only reasonable alternative.

93. After Plaintiff reported CoreCivic's unlawful conduct to the DOL, CoreCivic subjected him to multiple adverse actions, including harassment, assignment to undesirable job duties, and constructive discharge.

94. A causal connection existed between Plaintiff's good faith complaint to the DOL and the subsequent adverse action(s) taken against him.

95. CoreCivic knew or should have known about the adverse actions taken against Plaintiff during his employment.

96. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of CoreCivic, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by CoreCivic, thus making CoreCivic liable for said actions under the doctrine of *respondeat superior*.

97. CoreCivic failed to make good faith efforts to establish and enforce policies to prevent unlawful retaliation against its employees.

98. CoreCivic failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the federal labor laws.

99. As shown by the foregoing, Plaintiff suffered intentional retaliation for reporting CoreCivic's unlawful conduct to the DOL.

100. As a direct and proximate result of CoreCivic's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

101. By failing to take prompt and effective remedial action, CoreCivic, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

102. As a further direct and proximate result of CoreCivic's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of emotional distress and related compensatory damages.

103. CoreCivic acted in bad faith and with reckless disregard to Plaintiff's legal rights, entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against CoreCivic for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such and further legal and equitable relief as the Court deems just and proper.

## Demand for Jury Trial and Designation of Place of Trial

Plaintiff requests a trial by jury in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

*(Signature on subsequent page)*

Respectfully Submitted,

CORNERSTONE LAW FIRM

By: /s/ *Joshua P. Wunderlich*
    Joshua P. Wunderlich  D.Kan #78506
    j.wunderlich@cornerstonefirm.com
    8350 N. St. Clair Ave., Suite 225
    Kansas City, Missouri 64151
    Telephone    (816) 581-4040
    Facsimile    (816) 741-8889
    ATTORNEY FOR PLAINTIFF